IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **DAVID L. RHODES and** | § | |
| **JANIE RHODES**, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | Civil Action No. **3:10-CV-02347-L** |
| | § | |
| **WELLS FARGO BANK, N.A**. | § | |
| **and FEDERAL HOME LOAN** | § | |
| **MORTGAGE CORPORATION,** | § | |
| | § | |
| Defendants. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court is Plaintiffs' Motion to Reconsider and Vacate Judgment, filed November 28, 2012. After carefully reviewing the motion, response, reply, record, and applicable law, the court **grants in part and denies in part** Plaintiffs' Motion to Reconsider and Vacate Judgment. The court **grants** Plaintiffs' Motion to Reconsider and Vacate Judgment to the extent that Defendants failed to meet their burden of proof with regard to the statute of frauds defense and **vacates** sections III(A)(3) through III(A)(3)(b), on pages 25 through 32, of its October 31, 2012 memorandum opinion and order that contain the court's discussion regarding Defendants' statute of frauds defense and the applicability of the equitable exceptions to the statute of frauds asserted by Plaintiffs.[1]  For the reasons herein explained, however, the court's conclusion as to Defendants' statute of frauds defense does not affect the outcome of this case or the court's prior determination that Defendants are

---

[1] Given the court's determination that Defendants have not met their burden with regard to the statute of frauds defense, its discussion regarding the applicability of the equitable exceptions to the statute of frauds alleged by Plaintiffs is no longer relevant.

**Memorandum Opinion and Order – Page 1**

entitled to judgment on Plaintiffs' unilateral contract claim because the court's ruling on Defendants' statute of frauds defense was an alternate basis or other ground to support the court's decision to grant Defendants' summary judgment motion as to Plaintiffs' unilateral contract claim.  Plaintiffs' Motion to Reconsider and Vacate Judgment is **denied** in all other respects.

## I.      Background

Plaintiffs David L. Rhodes ("Rhodes") and Janie Rhodes (collectively, "Plaintiffs") originally brought this lawsuit against Defendants Wells Fargo, Bank, N.A. ("Wells Fargo") and  Federal Home Loan Mortgage Corporation ("Freddie Mac") (collectively, "Defendants") on November 2, 2010, alleging various causes of action against Defendants arising out of Wells Fargo's foreclosure and Freddie Mac's purchase of the property in Dallas, Texas.  Plaintiffs' claims included those for breach of contract, anticipatory breach of contract, unreasonable collection efforts, fraud, negligent misrepresentation, quiet title and trespass to try title, and violations of the Texas Debt Collection Practices Act ("TDCPA") and the Texas Deceptive Trade Practices Act ("DTPA").  On October 31, 2012, the court granted Defendants Wells Fargo Bank, N.A. and Federal Home Loan Mortgage Corporation's Motion for Summary Judgment, and dismissed the action with prejudice.  Plaintiffs seek relief from the court's October 31, 2012 memorandum opinion and order and judgment on various grounds.  Other facts pertinent to this case are set forth in the court's October 31, 2012 memorandum opinion and order (Doc. 38).

## II.     Legal Standard for Relief under Fed. R. Civ. P. 59(e)

The Federal Rules of Civil Procedure do not specifically provide for motions for reconsideration.  *Shepherd v. Internaltional Paper Co.*, 372 F.3d 326, 328 (5th Cir. 2004).  Such motions are analyzed under Rule 59(e) or Rule 60(b).  *Hamilton Plaintiffs v. Williams Plaintiffs*, 147

F.3d 367, 371 n.10 (5th Cir. 1998). Rule 59(e) governs when a motion for reconsideration is filed

within 28 days of the challenged judgment.   Fed. R. Civ. P. 59(e); *Williams v. Thaler*, 602 F.3d 291,

303 (5th Cir.), *cert. denied*, 131 S. Ct. 506 (2010).  Plaintiffs filed their motion for reconsideration

28 days after the judgment was entered in this case on October 31, 2012.  Rule 59(e) therefore

applies.

      "Motions for a new trial or to alter or amend a judgment must clearly establish either a

manifest error of law or fact or must present newly discovered evidence." *Simon v. United States*,

891 F.2d 1154, 1159 (5th Cir. 1990) (citations omitted).  Such motions may not be used to relitigate

issues that were resolved to the movant's dissatisfaction. *Forsythe v. Saudi Arabian Airlines Corp.*,

885 F.2d 285, 289 (5th Cir. 1989).  A Rule 59 motion may not be used to relitigate old matters, raise

arguments, or present evidence that could have been raised prior to entry of judgment. *See generally*

11 C. WRIGHT, A. MILLER & M. KANE § 2810.1 at 127-28 (2d ed. 1995); *see also Simon*, 891

F.2d at 1159.  When considering a Rule 59(e) motion to reconsider, a court may not grant such a

motion unless the movant establishes: "(1) the facts discovered are of such a nature that they would

probably change the outcome; (2) the alleged facts are actually newly discovered and could not have

been discovered earlier by proper diligence; and (3) the facts are not merely cumulative or

impeaching." *Infusion Resources, Inc. v. Minimed, Inc.*, 351 F.3d 688, 696-97 (5th Cir. 2003).

District courts have "considerable discretion in deciding whether to grant or deny a motion to alter

a judgment." *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995).  In exercising this discretion, a

district court must "strike the proper balance between the need for finality and the need to render just

decisions on the basis of all the facts." *Id*.  With this balance in mind, the Fifth Circuit has observed

that Rule 59(e) "favor[s] the denial of motions to alter or amend a judgment." *Southern Constructors Group, Inc. v. Dynalectric Co.*, 2 F.3d 606, 611 (5th Cir. 1993).

## III.   Discussion

Plaintiffs seek reconsideration of the court's ruling as to their claims based on an alleged unilateral contract, unreasonable collection efforts, alleged TDCPA and DTPA violations, negligent misrepresentation, suit to quiet title and trespass to try title, and declaratory and other equitable relief.

### A.   Unilateral Contract Claim

With regard to their unilateral contract claim, Plaintiffs contend: (1) Rhodes's affidavit testimony concerning discussions with various Wells Fargo employees is admissible nonhearsay under Federal Rule of Evidence 801(d)(2)(D); (2) a fact issue exists because Defendants failed to provide evidence that they satisfied the requirements of  section 26.02(e) and (f) of the Texas Business and Commerce Code; and (3) the court failed to "mention" the alleged agreement by Wells Fargo to accept the Rhodes's late payment.

#### 1.   Nonhearsay – Rule 801(d)(2)(D)

Plaintiffs contend that the alleged statements by Wells Fargo employees to Rhodes that are referred to in Rhodes's affidavit are admissible as nonhearsay pursuant to Federal Rule of Civil Procedure 801(d)(2)(D) as admissions by a party opponent because "Wells Fargo's agents are authorized to inform borrowers about the status of their loans, the consequences of certain actions, the options available to borrowers, and the proper actions to take; consequently, the statements contained in Rhodes' affidavit are related to a matter within the scope of employment."  Pl.'s Mot. 3.

Defendants respond that Plaintiffs, as the proponents of such evidence, have not satisfied the prerequisites for Rule 801(d)(2)(D), and the court therefore correctly concluded that Rhodes's out-of-court statements are inadmissible.  Specifically, Defendants assert that Plaintiffs have failed to establish that the alleged statements were made: (1) by Wells Fargo's agents or employees; (2) within the course or scope of the declarant's agency or employment; and (3) while the agency or employment relationship existed.  Regarding the first requirement, Defendants contend:

> The Rhodes Affidavit (with respect to the alleged statements of purported Wells Fargo employees) fails to identify by name, title, department and/or division, the individuals who allegedly made any statements to Mr. Rhodes on behalf of Wells Fargo. In most instances, the Rhodes Affidavit summarily states that: he "contacted Wells Fargo . . . and was told" (Doc. 31-1 at 1-3); "Wells Fargo told me" (*id*. at 2); "I was informed by Wells Fargo" (*id*. at 2); and "Wells Fargo stated" (*id*. at 3).  As the Fifth Circuit held in *Davis v. Mobil Oil Exploration & Producing Southeast, Inc.*:
>
> > It should not be understated, however, that while a name is not in all cases required, a district court should be presented with sufficient evidence to conclude that the person who is alleged to have made the damaging statement is in fact a party or an agent of that party for purposes of making an admission within the context of Rule 801(d)(2)(D).
>
> *Davis v. Mobil Oil Exploration & Producing Southeast, Inc.*, 864 F.2d 1171, 1174 (5th Cir. [] 1989); *see also Harrison v. Formosa Plastics Corp. Tex.*, 776 F. Supp. 2d 433, 440 (S.D. Tex. [] 2011) (court held that the plaintiff failed to establish that the statements of the defendant's purported employees fell within the FED. R. EVID. § 801(d)(2)(D) exception to the hearsay rule, because the plaintiff failed to identify the names or job titles of the defendant's purported employees.)
>
> The Rhodes Affidavit failed to provide any evidence that would allow the Court to conclude that the statements that he attributes to "Wells Fargo," were indeed made by agents or employees of Wells Fargo. Even in those instances where the Rhodes Affidavit attempts to identify individual employees by name, it falls short of establishing the FED. R. EVID. § 801(d)(2)(D) prerequisites. In one instance, the Rhodes Affidavit generally refers to an individual named Amber without any clear indication of whom she worked for, in which department or division she worked, or her title. In another instance, the Rhodes Affidavit broadly and generically refers to "Wells Fargo's attorneys [sic] office" and an individual named Brittany, without any

further indication of the attorney, Brittany's last name, or her title. In none of these instances does the Rhodes Affidavit establish, by a preponderance of the evidence, that the statements were made by an agent or employee of Wells Fargo. Thus, Plaintiffs are not entitled to the benefits of FED. R. EVID. § 801(d)(2)(D), and the Court properly ruled that such statements are inadmissible hearsay.

Def.'s Resp. 5-6.

Plaintiffs counter that Defendants did not previously object to Plaintiffs' summary judgment evidence on the grounds that Rhodes's affidavit contained hearsay.  Plaintiffs further contend that the statements at issue "were made by Defendants' agents and employees," and they maintain that Defendants' argument and proposed application of Rule 801(d)(2)(D) to the facts of this case is unreasonable:

Defendants argue that statements like "he contacted Wells Fargo and was told," "Wells Fargo told me," and "I was informed by Wells Fargo" are insufficient to show that Plaintiff spoke with Wells Fargo employees. It is difficult to understand why these statements are insufficient. When a customer calls a customer service line or a phone number listed on a bill or on the lender's website, it is reasonable to presume that the customer is speaking with an agent or employee of the lender. Additionally, it is unreasonable to expect a borrower to take down the phone number he called, the first and last name of the representative with whom he spoke, and the job title of the representative for every phone call made during the borrower and lender's relationship.

Pl.'s Reply 2.    Plaintiffs further assert that *Davis* supports admission of Rhodes's statements because, like the plaintiff in *Davis*, although he identifies only the date of the communication or the first name of the person that he spoke with, Rhodes "has sufficiently described the discussions and surrounding circumstances to conclude that the people he spoke with were agents of Defendants." *Id.*  Plaintiffs therefore contend that they have "sufficiently described the agency relationship to create a Rule 801(d)(2)(D) exclusion." *Id.*

Plaintiffs do not specify which statements fall within Rule 802(d)(2)(D) and support their unilateral contract claim.   The court therefore assumes that Plaintiffs contend that all of the statements previously relied on by them in response to Defendants' summary judgment issue fall within Rule 802(d)(2)(D).   In response to Defendants' summary judgment motion, Plaintiffs contended that their:

> actions in applying for a loan modification, Defendants' subsequent assurances that Plaintiffs were in the modification process, Wells Fargo['s statement that it] does not accept payments during the loan modification process, [Wells Fargo's statement that it] does not foreclose during the loan modification review process, and [Wells Fargo's request for] Plaintiffs to make an $8,000 down payment, show that Plaintiffs' actions were "unequivocally referable" to the alleged oral agreement and corroborate the existence of that agreement.

Mem. Op. and Order 20 (citing Pls.' Resp. 20-21, which in turn cites Pls.' App. 2, 3, 14-17).   In support of their unilateral contract claim, Plaintiffs also contended that they accepted Wells Fargo's offer to modify their loan by providing Wells Fargo all information requested and making an $8,000 down payment. Plaintiffs argue that the unilateral contract was anticapatorily breached by Defendants when they foreclosed on the Property on August 3, 2010. *Id.* (citing Pls.' Resp. 22-23).

The court noted in its opinion that Plaintiffs did not appear to contend in response to Defendants' motion that an oral agreement came into existence after they defaulted a second time as a result of any alleged representations by Wells Fargo that it would not foreclose.   The court further noted that all of the evidence that Plaintiffs relied on in arguing that an oral agreement was created pertained to events that occurred after they defaulted the first time and before they entered into the Forbearance Agreement ("FA") and Stipulated Repayment Plan Agreement ("SRP") in February 2010.   The court nevertheless considered Plaintiffs' evidence of events and statements allegedly made by Wells Fargo in connection with their late June 2010 payment and second default

and concluded that this evidence was similarly insufficient to raise a genuine dispute of material fact

as to Plaintiffs' unilateral contract claim:

> [T]he record is devoid of any evidence that Wells Fargo similarly promised Plaintiffs that it would not foreclose after they defaulted the second time in June 2010 while they were being considered again for various workout options, which Rhodes refers to as a loan modification.  Rhodes states in his affidavit that he contacted Wells Fargo in June 2010, to advise that Plaintiffs' June 2010 payment would be late and was told by Wells Fargo "that [it] would be okay."  Pls.' App. 3.  He further states that he telephoned Wells Fargo on June 7, 2010, and he "was told everything was ok and that we were not in foreclosure."  Pls.' App. 3, 10.  These statements by Wells Fargo are not evidence that Wells Fargo promised not to commence acceleration or foreclosure proceedings as a result of Plaintiffs' late payment and second default. At most, it merely shows that Plaintiffs were not in foreclosure *as of June 7, 2010.* Likewise, Plaintiffs' evidence that Wells Fargo agreed to consider and process their second request for a loan modification is not evidence that Wells Fargo agreed to postpone foreclosure proceedings, especially in light of Wells Fargo's June 9, 2010 letter advising Plaintiffs that their "loan is in Foreclosure status at this time."  Pls.' App. 30.  Rhodes's testimony is also inconsistent with his August 5, 2010 letter in which he states that "Our June Payment was returned to us . . . *We called and were told it was one day late. . . . We were told that sorry, no exception for any reason*; we had no option but to start all over with the loan mod process."  Pls.' App. 31 (emphasis added).
>
> Rhodes also states in his affidavit that he was told that Wells Fargo's attorney had sent an e-mail "requesting" postponement of the foreclosure and Wells Fargo foreclosed on the Property on August 3, 2012, "despite its promise that it would postpone the foreclosure." Pls.' App. 3.  A statement that a *request* to postpone the impending foreclosure had been made, however, is not evidence that Wells Fargo promised not to foreclose or postpone the foreclosure.  Moreover, Rhodes's statements in this regard are directly contradicted by Plaintiffs' other summary judgment evidence.
>
> According to Rhodes's handwritten notes, the foreclosure had not been postponed as of August 2, 2012. Pls.' App. 12 (8/2- F/Cl not postponed. they need another update.") (emphasis in original).  In addition, Wells Fargo's call notes show that Rhodes was told on August 2, 2012, that Wells Fargo would "attempt" to postpone the foreclosure scheduled for August 3, 2012, but could "NO[T] GUARANTEE" that it would be postponed. Pls.' App. 41.  Thus, while Wells Fargo may have agreed to postpone the foreclosure proceedings that were initially commenced after Plaintiffs defaulted the first time in 2009, it made clear via the FA and SRP to which Plaintiffs agreed, that acceleration and foreclosure proceedings

would be reinstated in the event Plaintiffs failed to perform under the FA and SRP, which required that payments be made in accordance with the schedule provided. Pls.' App. 18, ¶ 3 ("The monthly plan payments are due according to the attached Schedule 'A.' **There is no grace period**.") (emphasis in original).

Mem. Op. and Order 22-24.  According to Rhodes's affidavit, none of the alleged statements were made by Freddie Mac.  Thus, none are enforceable against Freddie Mac.  Regarding the statements allegedly made by Wells Fargo, the court finds, as it did in its prior opinion, that there is no basis for admitting the evidence under Rule 801(d)(2).

Plaintiffs are correct that under Rule 802(d)(2)(D) an out-of-court statement of a declarant is not hearsay if it is "offered against an opposing party and . . . was made by the party's agent or employee on a matter within the scope of that relationship and while it existed."  Fed. R. Evid. 802(d)(2)(D).  As the proponent of such evidence, however, Plaintiffs had the burden of establishing the preliminary facts that bring the statement within Rule 801(d)(2)(D).  *United States v. Richards*, 204 F.3d 177, 202 (5th Cir. 2000), *cert. denied sub nom*, 531 U.S. 826 (2000), *overruled on other grounds*, *United States v. Cotton*, 535 U.S. 625, 629 (2002).  "The statement itself may be considered in making this determination.  However, '[t]he contents of the statement . . . are not alone sufficient to establish . . . the agency or employment relationship and scope thereof under subdivision (D).'"  *Richards*, 204 F.3d at 202 (quoting Fed. R. Evid. 801(d)(2)) (internal citations omitted).  Rule 801(d)(2) has since been amended but the amended version still makes clear that any such statement "does not by itself establish . . . the existence or scope of the relationship under (D)."  Fed. R. Evid. 801(d)(2).  Plaintiffs have not presented evidence to show that the unidentified persons or persons referred to only by first name in Rhodes's affidavit were agents or employees of Wells Fargo or that

the statements were made by agents or employees of Wells Fargo in the scope of their employment or agency.

Rhodes's statements such as "he contacted Wells Fargo and was told," "Wells Fargo told me," and "I was informed by Wells Fargo" are insufficient, without more, to establish the necessary preliminary facts that would bring the statements within Rule 801(d)(2)(D). For the same reason, the statements alone are insufficient to satisfy *Davis's* requirement that the proponent of the evidence present to the district court "sufficient evidence to conclude that the person who is alleged to have made the damaging statement is in fact a party or an agent of that party for purposes of making an admission within the context of Rule 801(d)(2)(D)." *Davis*, 864 F.2d at 1174. Plaintiffs' unsubstantiated contention that the statements at issue "were made by Defendants' agents and employees" is not evidence and does not satisfy Plaintiffs' burden with regard to Rule 801(d)(2)(D).

Plaintiffs also contend that it is reasonable to assume that a customer is speaking with an agent or employee of the lender when he telephones a customer service line or a phone number listed on a bill or on the lender's website. Rhodes, however, does not state in his affidavit that he telephoned Wells Fargo's customer service line or a number listed on his bill or Wells Fargo's website. Thus, the assumption or inference advocated by Plaintiffs is not supported by the record. Accordingly, without additional information, the court cannot reasonably infer that the alleged statements were made by agents or employees of Wells Fargo on a matter within the scope of that relationship and while it existed. Fed. R. Evid. 802(d)(2)(D). The court also disagrees with Plaintiffs' contention that it is "unreasonable to expect a borrower to take down the phone number he called, the first and last name of the representative with whom he spoke, and the job title of the representative for every phone call made during the borrower and lender's relationship." Pl.'s Reply

2.  Given the gravity of the situation and the probability that the property would be foreclosed on, it is not unreasonable to expect that Rhodes would have kept better records of his alleged conversations with Wells Fargo representatives, particularly if he intended to enforce the promises alleged to have been made.

Even assuming that any of the alleged statements by Wells Fargo are admissible, Plaintiffs' unilateral contract claim still fails.  Although the court stated in its prior opinion that it would not consider the hearsay statements in ruling on Defendants' summary judgment motion, the court's opinion contains a detailed analysis of all of the evidence relied on by Plaintiffs in response to Defendants' motion, as well as evidence not relied on by Plaintiffs.  The court also explained in detail why Plaintiffs' unilateral contract theory and evidence, including Rhodes's affidavit testimony, were insufficient to raise a  genuine dispute of material fact.  The court's ruling that Rhodes's affidavit testimony as to what Wells Fargo told him is inadmissible hearsay was therefore an alternate or additional basis for granting Defendants' summary judgment motion as to Plaintiffs' unilateral contract claim.  Mem. Op. and Order 19-24.  Plaintiffs have not challenged the court's reasoning in this regard on the merits for granting Defendants' summary judgment motion as to Plaintiffs' unilateral contract claim.  Thus, even if Plaintiffs are correct that the statements at issue qualify as nonhearsay under Rule 802(d)(2)(D), the result is the same, and they are not entitled to relief under Rule 59(e).  The court will therefore deny Plaintiffs' request to alter or amend the judgment based on their contention that the alleged statements by Wells Fargo are nonhearsay and admissible.

2.        **Statute of Frauds**

Plaintiffs contend that both the court and Defendants ignored sections 26.02(e) and (f) of the

Texas Business and Commerce Code.  Plaintiffs assert that Defendants were required but failed to

provide evidence that they satisfied certain notice requirements in  sections 26.02(e) and (f) of the

Texas Business and Commerce Code.  Plaintiffs contend that "there is no evidence of a merger

clause in the original loan documents, and, although the FA and SRP contains [sic] a merger clause,

it is not boldface, capitalized, underlined or otherwise conspicuously noted." Pls.' Mot. 3.  Plaintiffs

therefore maintain that the statute of frauds does not apply to the alleged oral agreement by Wells

Fargo in June 2010 to allow Plaintiffs to delay or pay late their loan payments. Plaintiffs further

contend that an agreement to accept late payments, which Plaintiffs characterize as an agreement to

alter the method and timing of a payment, is not a material modification of an existing contract and

therefore is not subject to the statute of frauds.  For support, Plaintiffs cite *Horner v. Bourland*, 724

F.2d 1142, 1148 (5th Cir. 1984).

Defendants counter that Plaintiffs have not established a manifest error of law or fact, and

that they cannot use Rule 59(e) to raise arguments that could and should have been raised previously

or to relitigate the statute of frauds issue.  Defs.' Resp. 8-9.  Defendants contend that Plaintiffs did

not previously argue in response to the summary judgment motion that the statute of frauds did not

apply but instead merely asserted that partial performance or promissory estoppel saved their oral

unilateral contract claim from the statute of frauds.  Defendants also contend that Plaintiffs did not

previously argue in response to Defendants' motion that an agreement to accept a late payment is

not subject to the statute of frauds on the grounds that it is not a material alternation of an existing

agreement.  Defendants contend that Plaintiffs could have but did not assert these theories and

arguments when they responded to Defendants' summary judgment motion.  Defendants therefore maintain that Plaintiffs should not be permitted to use Rule 59(e) as a means of relitigating issues that were resolved to their dissatisfaction.

Alternatively, Defendants contend that even if the court considers Plaintiffs' new arguments and theories, they are still entitled to judgment on their unilateral contract claim based on the alleged 2009 agreement that Wells Fargo would not foreclose on Plaintiffs' property while they applied for a loan modification.  Defendants contend that because the court's opinion included reasoning, independent of the statute of frauds issue, supporting the decision to grant Defendants' summary judgment motion as to Plaintiffs' unilateral contract claim, it is irrelevant whether Plaintiffs' statute of frauds arguments have merit since Defendants would still be entitled to judgment for the independent reasons set forth in the court's opinion.

Defendants nevertheless maintain that Plaintiffs' new contentions are unavailing.  Defendants contend that the FA and SRP clearly state that there would be no grace period and that Plaintiffs' failure to perform in accordance with the terms of those agreements would result in the reinstitution of foreclosure proceedings.  Defendants therefore contend that it was a material term of the FA and SRP that payments be made timely and in accordance with the FA and SRP, and that any alleged agreement to modify the date on which payments were due was a material alteration of the FA and SRP and thus subject to the statute of frauds.  Defendants further assert that Plaintiffs have acknowledged and stipulated in their motion for reconsideration that the FA and SRP contain merger clauses and that the merger clauses contained in these agreements satisfy sections 26.02(e) and (f) of the Texas Business and Commerce Code.  Defs.' Resp. 11 (citing and quoting Pls.' Mot. 3).  Defendants contend that even if the court determines that the merger clauses in the FA and SRP do

not satisfy sections 26.02(e) and (f), they are still entitled to judgment on Plaintiffs' unilateral contract claim because the absence of a merger clause merely results in the introduction of parole evidence, and the only evidence relied on by Plaintiffs has been determined by the court to be inadmissible hearsay.

Section 26.02 requires loan agreements that exceed $50,000 to be in writing and signed by the party to be bound, or the party's representative, to be enforceable.  Tex. Bus. & Comm. Code § 26.02(a)-(b).  Section 26.02 further states that the parties' rights and obligations will be determined solely from such written agreement, which "may not be varied by any oral agreements or discussions that occur before or contemporaneously with the execution of the agreement."  *Id.* at § 26.02(c)-(d).  As a result, an oral modification to a loan agreement under section 26.02  of the Texas Business and Commerce Code is unenforceable and barred by the statute of frauds unless the oral modification does not materially alter the parties' obligations under the original written loan agreement.  *Horner*, 724 F.2d at 1148.  Plaintiffs also previously contended, and the court considered in its October 31, 2012 opinion, whether partial performance and promissory estoppel constituted equitable exceptions to the statute of frauds.[2]

Section 26.02 defines "loan agreement" to mean:

> one or more promises, promissory notes, agreements, undertakings, security
> agreements, deeds of trust or other documents, or commitments, or any combination
> of those actions or documents, pursuant to which a financial institution loans or

---

[2] In *Bank of Texas, N.A. v. Gaubert*, the court noted: "No [Texas] case has expressly held that the equitable exceptions to the traditional statute of frauds also apply to section 26.02." 286 S.W.3d 546, 554 (Tex. App.—Dallas 2009, pet. dism'd w.o.j.); *Hill v. Bank of New York Mellon*, No. W-12-CA-083, 2012 WL 6924545, at *4 n.4 (W.D. Tex. May 16, 2012) (same).  The *Gaubert* court also noted that Texas "[c]ases discussing promissory estoppel in the context of section 26.02 [have] concluded that, assuming the exception applied, the evidence did not raise an issue of fact as to the existence of one or more of its elements."  *Gaubert*, 286 S.W.3d at 555.

*delays repayment of or agrees to loan or delay repayment of money*, goods, or
another thing of value or to otherwise extend credit or make a financial
accommodation.

Tex. Bus. & Comm. Code § 26.02(a)(2).  For loan agreements subsection 26.02 to apply, a

written loan agreement involving more than $50,000 must contain a merger clause that

satisfies the requirements set forth in section 26.02(e), which provides:

> (e) In a loan agreement subject to Subsection (b) of this section, the financial
> institution shall give notice to the debtor or obligor of the provisions of Subsections
> (b) and (c) of this section. The notice must be in a separate document signed by the
> debtor or obligor or incorporated into one or more of the documents constituting the
> loan agreement. The notice must be in type that is boldface, capitalized, underlined,
> or otherwise set out from surrounding written material so as to be conspicuous. The
> notice must state substantially the following:

> "This written loan agreement represents the final agreement between the parties and
> may not be contradicted by evidence of prior, contemporaneous, or subsequent oral
> agreements of the parties.

> "There are no unwritten oral agreements between the parties.

> _____     _____
>   "Debtor or Obligor                     Financial Institution"

Tex. Bus. & Comm. Code § 26.02(e).  If the notice required by section 26.02(e) is not provided

before the loan agreement is executed or the notice is not conspicuous, section 26.02's requirement

that the loan agreement be in writing does not apply, "but the validity and enforceability of the loan

agreement and the rights and obligations of the parties are not impaired or affected." *Id*. § 26.02(f).

As the statute of frauds was an affirmative defense, Defendants had the burden of proof as

the summary judgment movant on their affirmative defense and were required to "establish beyond

peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."

*Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original). Here, as

previously noted, Plaintiffs contended in response to Defendants' summary judgment motion that

**Memorandum Opinion and Order – Page 15**

their unilateral contract claim was based on the alleged agreement by Wells Fargo not to foreclose on Plaintiffs' property during the loan modification process.  This alleged agreement is subject to the statute of frauds because it is a "material modification" of the Note, Deed of Trust, FA, and SRP. *Horner*, 724 F.2d at 1148 (5th Cir. 1984).  Plaintiffs also contend for the *first* time in their motion for reconsideration that their unilateral contract claim is based on the alleged agreement by Wells Fargo to permit Plaintiffs to delay or make their June 2010 mortgage payment late.  Contrary to Plaintiffs' assertion, such agreement is also subject to the statute of frauds because it qualifies as a "loan agreement" under Section 26.02 and exceeds $50,000.  Tex. Bus. & Comm. Code § 26.02(a)-(b).

After reviewing the FA and SRP, however, the court concludes that no language akin to that required by section 26.02(e) is contained in either of these agreements.  Defendants therefore failed to establish an essential element of their statute of frauds affirmative defense and were not entitled to judgment based on this affirmative defense.  Further, because Defendants, not Plaintiffs, had the burden of proof on this issue, the court concludes that it is proper for it to consider the issue under Rule 59(e), although it was raised for the first time in Plaintiffs' motion for reconsideration.  The court will therefore grant Plaintiffs' motion for reconsideration based on their contention that Defendants failed to meet their burden of proof with regard to the statute of frauds defense.  Instead of issuing an amended order, the court will vacate sections III(A)(3) through III(A)(3)(b) of its October 31, 2012 memorandum opinion and order that contain the court's discussion regarding Defendants' statute of frauds defense and the applicability of the equitable exceptions to the statute of frauds asserted by Plaintiffs.  The court's conclusion as to Defendants' statute of frauds defense, however, does not affect the court's determination that Defendants are entitled to judgment on

Plaintiffs' unilateral contract claim because the court's ruling on Defendants' statute of frauds defense was an alternate basis and other grounds support the court's decision to grant Defendants' summary judgment motion as to Plaintiffs' unilateral contract claim. As already discussed, the court considered Rhodes's affidavit testimony regarding the alleged statements by Wells Fargo that form the basis of Plaintiffs' unilateral contract claim and determined that this evidence was insufficient to raise a genuine dispute of material fact to survive Defendants' summary judgment motion.

### 3.    Alleged Agreement to Accept Late Payment

Plaintiffs contend "Wells Fargo promised that if Plaintiffs made a late payment, it would be accepted." Pls.' Mot. 4. Plaintiffs contend that they "made that payment, and thus the [oral unilateral] agreement is enforceable." *Id.* Plaintiffs further assert that the court, in addressing Plaintiffs' unilateral contract claim, failed to "mention" the alleged agreement by Wells Fargo to accept the Rhodeses' late payment and that such alleged agreement and oral modification is permissible and does not implicate the statute of frauds because Defendants failed to provide evidence that they satisfied sections 26.02(e) and (f) of the Texas Business and Commerce Code. *Id.* As previously noted, Defendants contend that Plaintiffs' contention in this regard is based on a new theory not previously asserted in response to Defendants' summary judgment motion and is therefore an improper basis for relief under Rule 59(e).

Contrary to Plaintiffs' assertion, the court carefully considered all of the arguments previously raised by them in response to Defendants' summary judgment motion with regard to an alleged oral agreement. Mem. Op. and Order 19-25. Although this particular argument and related evidence were not relied on by Plaintiffs in responding to Defendants' summary judgment motion as to Plaintiffs' unilateral contract claim, the court considered it and concluded that it was

insufficient to raise a genuine dispute of material fact to survive Defendants' summary judgment motion:

> Rhodes states in his affidavit that he contacted Wells Fargo in June 2010, to advise that Plaintiffs' June 2010 payment would be late and was told by Wells Fargo "that [it] would be okay." Pls.' App. 3. He further states that he telephoned Wells Fargo on June 7, 2010, and he "was told everything was ok and that we were not in foreclosure." Pls.' App. 3, 10. These statements by Wells Fargo are not evidence that Wells Fargo promised not to commence acceleration or foreclosure proceedings as a result of Plaintiffs' late payment and second default. At most, it merely shows that Plaintiffs were not in foreclosure *as of June 7, 2010.*

*Id.* 23-23.

Further, although not discussed in the court's prior opinion, the court notes that Rhodes's affidavit statement that he contacted Wells Fargo in June 2010 (prior to June 7, 2010) to advise that Plaintiffs' June 2010 payment would be late and was told by Wells Fargo "that [it] would be okay" is the only evidence presented by Plaintiffs to establish the alleged oral unilateral agreement. Although Rhodes kept notes of his communications with Wells Fargo, which includes a notation regarding his June 7, 2010 telephone call to Wells Fargo, there is no reference in his notes to any telephone call from him to Wells Fargo in June 2010 before June 7, 2010, when according to Plaintiffs, Wells Fargo agreed to accept their late payment.  Plaintiffs also submitted as evidence Wells Fargo's call log notes; however, there is no reference in the log notes to either the June 7, 2010 telephone call or the telephone call that Rhodes says he made in June 2010 before June 7, 2010. Given the discrepancies in Plaintiffs' evidence, the court concludes that Rhodes's affidavit testimony regarding Wells Fargo's alleged statements created at best only a weak issue of fact and the record, taken as a whole, could not lead a rational trier of fact to find for Plaintiffs on their unilateral contract claim. Accordingly, Plaintiffs' evidence regarding an alleged oral agreement by Wells Fargo

to accept Plaintiffs' late payment in June 2010 is insufficient to raise a genuine dispute of material fact.

The court also concludes that Plaintiffs' unilateral contract claim fails for another reason. In support of their summary judgment motion, Defendants contended that Plaintiffs' oral unilateral contract claim failed for lack of consideration:

> [T]here is no evidence of the Rhodes' consideration for this purported oral contract. The Rhodes were already obligated to make the payments to Wells Fargo under the terms of the Note and the Stipulated Repayment Plan, and a promise to fulfill a preexisting duty is not valid consideration for a contract. *See, e.g., Martens v. Prairie Producing Co.*, 668 S.W.2d 889, 891 (Tex. App.   Houston [14th Dist.] 1984, no pet.); *Arthur J. Gallagher v. Dieterich*, 270 S.W.3d 695, 702 (Tex. App.   Dallas 2008, no pet.) ("When a party agrees to do no more than that which he is already bound to do under an existing contract, the consideration is not sufficient to support a modification.") (citation omitted); *see also James v. Wells Fargo Bank, N.A.*, 5:12-cv-0042-C, slip op. at 8, 10 (N.D. Tex. July 18, 2010) (rejecting assertion of partial performance, stating, "The fact that Plaintiffs made partial payments to Defendant does not unequivocally confirm the existence of a new contract because Plaintiffs were already obligated to make such payments under the deed of trust.").

Defs.' MSJ Reply 11.  The court agrees.  As correctly noted by Defendants, Plaintiffs were already required to make mortgage payments in accordance with the FA and SRP in a timely fashion.  Thus, any alleged agreement by Wells Fargo to forego timely payments would have resulted in modification of the FA and SRP.  That Plaintiffs made the June 2010 payment, however, does not satisfy the requirement that an agreement to modify an existing contract include additional or new consideration, and an agreement to do no more than what is already required under an existing contract is therefore insufficient. *See Arthur J. Gallagher & Co. v. Dieterich*, 270 S.W.3d 695, 701-02 (Tex. App.   Dallas 2008, no pet.); *Boondoggles Corp. v. Yancey*, No. 01-05-00185-CV, 2006 WL 2192708, at *5-6 (Tex. App.   Houston [1st Dist.] Aug. 3, 2006).  Accordingly, regardless of

whether the argument was previously raised, the court determines that it is without merit and is not an adequate basis for altering or amending the judgment.

### B.      Unreasonable Collection Efforts

Plaintiffs contend "although a party may have a legal right to collect a debt, which Plaintiffs dispute in this case, the party still must exercise that right in a legal way[;] otherwise it subjects itself to a cause of action for damages." Pls.' Mot. 7.  Plaintiffs maintain that Defendants participated in unreasonable collection efforts and illegally pursued their alleged contractual rights.  In addition, Plaintiffs take issue with Defendants' and the court's reliance on the standard for unreasonable collection efforts set forth in *EMC Mortgage Corporation v. Jones*, 252 S.W.3d 857, 868 (Tex. Civ. App.   Dallas 2008, no pet).

As previously noted by the court, the Fifth Circuit has approved application of the standard in *EMC Mortgage Corporation* while at the same time noting that the standard advocated by Plaintiffs "has been largely disavowed by Texas courts." Mem. Op. and Order 47.  Further, the court discussed at length the reasons why the conduct that formed the basis of Plaintiffs' unreasonable collection effort claim failed under this standard.   Plaintiffs have therefore failed to establish either a manifest error of law or fact or present newly discovered evidence that would warrant alteration or amendment of the judgment with regard to this claim.

### C.      TDCPA and DTPA Claims

#### 1.      TDCPA

Plaintiffs argue that they provided sufficient evidence in response to Defendants' summary judgment motion to sustain their TDCPA claim under sections 392.304(a)(8) and (19).  Plaintiffs contend that the court overlooked Wells Fargo's alleged promise to accept a late payment, which

modified the FA and SRP.  Based on this promise, Plaintiffs contend that Wells Fargo's rejection of their late payment and conduct in accelerating and foreclosing violated section 392.301(a)(8). Based on an October 29, 2012 unpublished opinion in *Neaville v. Wells Fargo Bank, N.A.*, No. 3:11-CV-97-P, Plaintiffs contend that the court incorrectly determined that statements made by Wells Fargo regarding a loan modification cannot constitute representations or misrepresentations for purposes of the TDCPA.

For the reasons already discussed, Plaintiffs' argument and evidence regarding Wells Fargo's alleged promise to accept a late payment in June 2010 are insufficient to raise a genuine dispute of material fact as to Plaintiffs' unilateral contract claim.  Accordingly, any such agreement cannot support Plaintiffs' claim under sections 392.304(a)(8) and (19).  Moreover, contrary to Plaintiffs' assertion, the court, in ruling on Defendants' motion for summary judgment as to Plaintiffs' claims under sections 392.304(a)(8) and (19), considered and rejected their contention regarding Wells Fargo's alleged promise to accept a late payment because the court had already determined "that Wells Fargo was entitled to accelerate and foreclose under the parties' various agreements after Plaintiffs failed to make timely their June 2010 payment as required by the FA and SRP in June 2010."  Mem. Op. and Order 56-59.

Plaintiffs' reliance on *Neaville* is also misplaced, as the facts and evidence in this case are distinguishable from those in *Neaville*.  According to the court's opinion in that case, "Neaville has provided evidence that Wells Fargo misled him by informing him that he qualified for a loan modification."  *Neaville*, Doc. 52 at 13.  Unlike *Neaville*, there is no evidence in this case, inadmissible or otherwise, that Plaintiffs were ever informed by Wells Fargo that they had qualified for a second loan modification *after* they defaulted the second time in June 2010.  Plaintiffs have

therefore failed to establish either a manifest error of law or fact, or present newly discovered evidence that would warrant alteration or amendment of the judgment as to their TDCPA claim.

### 2.    DTPA

Plaintiffs contend that they are entitled to damages under the DTPA because Texas Finance Code section 392.404(a) is a tie-in statute that makes a violation of the TDCPA and deceptive trade practice under the DTPA. As noted in the court's prior opinion, Plaintiffs previously conceded that they have not asserted a DTPA claim and that no such claim existed.  The court therefore denied Defendants' summary judgment motion as to this claim as moot.  Mem. Op. and Order 1, n.1. Because Plaintiffs did not previously assert the arguments they now raise in their motion for reconsideration regarding the DTPA and advised the court that they did not intend to assert or pursue a DTPA claim, the court declines to consider Plaintiffs' DTPA argument in ruling on their motion and concludes that it is not a proper basis for seeking to alter or amend the judgment.

### D.    Negligent Misrepresentation

Plaintiffs contend that the court incorrectly applied the economic loss doctrine to their negligent misrepresentation claim.  Plaintiffs maintain that Defendants engaged in unreasonable collection efforts and violated the Texas Finance Code and that these two claims are available to Plaintiffs independent of any contract.  The court stands by its earlier determination and, for the reasons herein already explained, the court concludes that Plaintiffs' arguments regarding their TDCPA claim under the Texas Finance Code and unreasonable collection efforts claim are without merit.  Accordingly, Plaintiffs are not entitled to alteration or amendment of the judgment on this ground.

E.      Suit to Quiet Title and Trespass to Try Title

Plaintiffs contend that the court erred in determining that they failed to produce evidence of their superior title.  Plaintiffs contend that because the sale is void, they have superior title and Fannie Mae's claimed title is improper.  Plaintiffs further contend "Defendants waived their right to foreclose by refusing Plaintiffs' payments, by telling Plaintiffs they were approved for a loan modification, and by foreclosing upon Plaintiffs' Property while they were still in the loan modification process."  Pls.' Mot. 10.

Plaintiffs' quiet title and trespass to try title claims were based on their contention that the assignment from Mortgage Electronic Registration Systems, Inc. ("MERS") to Wells Fargo was invalid and the sale to Freddie Mac was void. In determining that Defendants were entitled to summary judgment on Plaintiffs' quiet title and trespass to try title claims, the court did not state that Plaintiffs had failed to produce evidence of their superior title; rather, the court determined that Defendants were entitled to judgment on these claims because it had already concluded for other reasons that Plaintiffs' contract claim based on the validity of the assignment failed as a matter of law.

The court further notes that Plaintiffs continue, as they did in response to Defendants' summary judgment, to blur the distinction between their first request for an alleged loan modification, which resulted in the FA and SRP executed by Rhodes in February 2010, with their second request for a loan modification in June 2010, *after* they defaulted under the FA and SRP. Although it is undisputed that Plaintiffs were approved for the FA and SRP in response to their first request for a loan modification, there is no evidence they were approved for the second requested loan modification after they defaulted the second time.  The evidence submitted by Plaintiffs

demonstrated the contrary.  Finally, Plaintiffs present no new basis to support their waiver argument that was previously rejected by the court in ruling on Defendants' summary judgment motion. Accordingly, Plaintiffs are not entitled to alteration or amendment of the judgment on this ground with regard to their quiet title and trespass to try title claims.

### F.      Declaratory and Other Equitable Relief

Plaintiffs contend that because an actual controversy exists with regard to its other claims, their claims for declaratory and equitable relief remain viable and they are entitled to an accounting. Plaintiffs' argument in this regard is mooted by the court's determination that their motion for reconsideration as to their other claims fails.  The court therefore declines to alter or amend the judgment on this ground.   Plaintiffs have therefore failed to establish either a manifest error of law or fact, or present newly discovered evidence that would warrant alteration or amendment of the judgment with regard to its request for declaratory and equitable relief.

### IV.    Conclusion

For the reasons herein stated, the court **grants in part and denies in part** Plaintiffs' Motion to Reconsider and Vacate Judgment.  The court **grants** Plaintiffs' Motion to Reconsider and Vacate Judgment to the extent that Defendants failed to meet their burden of proof with regard to the statute of frauds defense and **vacates** sections III(A)(3) through III(A)(3)(b) of its October 31, 2012 memorandum opinion and order that contain the court's discussion regarding Defendants' statute of frauds defense and the applicability of the equitable exceptions to the statute of frauds asserted by Plaintiffs. The court's conclusion as to Defendants' statute of frauds defense, however, does not affect the outcome of this case or the court's prior determination that Defendants are entitled to

judgment on Plaintiffs' unilateral contract claim because the court's ruling on Defendants' statute of frauds defense was an alternate basis or other ground to support the court's decision to grant Defendants' summary judgment motion as to Plaintiffs' unilateral contract claim.  Plaintiffs' Motion to Reconsider and Vacate Judgment is **denied** in all other respects.  Accordingly, all portions of the court's October 31, 2012 memorandum opinion and order **remain in effect**, except sections III(A)(3) through III(A)(3)(b), which have been vacated.  Because this opinion does not alter or change the outcome of this action, as previously determined by the court, an amended judgment will not be issued.

      **It is so ordered** this 14th day of May, 2013.

*Sam A. Lindsay*

Sam A. Lindsay
United States District Judge